Charles N. Kimball and Mary J. Kimball, Husband and Wife v. Commissioner.
Kimball v. Commissioner
Docket No. 52897.
United States Tax Court
T.C. Memo 1955-253; 1955 Tax Ct. Memo LEXIS 85; 14 T.C.M. (CCH) 1011; T.C.M. (RIA) 55253; September 12, 1955
John Wiseman, C.P.A., 1219 Chapline Street, Wheeling, W. Va., for the petitioners. Phillip O. North, Esq., for the respondent. MURDOCK Memorandum Findings of Fact and Opinion The Commissioner determined deficiencies in income tax of $1,221.14 for 1949 and $1,265.38 for 1950. The issues are whether the Commissioner erred in disallowing a part of the amounts claimed as "miscellaneous deductions" and whether the excess for each year of the advances to a corporation over the amounts received from the corporation are deductible. Findings of Fact The petitioners, husband and wife, filed joint returns for the taxable years with the collector of internal revenue for the district of West Virginia. They used a cash basis. Charles was born in 1872. He became a lawyer, practiced *86 for some years in Sistersville, West Virginia, but has not been in active practice since 1921. He retained his office in Sistersville for purposes other than the practice of law. The Old Hundred Gold Mining Company, hereafter called Old Hundred, was incorporated in 1935. Its capital stock consisted of 24,000 shares of $10 par value stock. It issued one-half of its stock for mining properties located near Silverton, Colorado, and the remaining shares were issued to Charles and others for $120,000 in cash. Charles originally acquired 2,582 shares for $25,812.50 and he purchased 12,000 additional shares for $7,500 on July 23, 1948. Lead and zinc were the chief products of the properties although some copper and a little gold and silver were obtained. The first operating efforts were unsuccessful, the original capital was expended and operations ceased in 1936. Stockholders advanced $77,250 then owing by the corporation. Charles became president of Old Hundred and, on his own, without meetings of directors, stockholders or other officers, assumed responsibility for and managed the affairs of Old Hundred at all times since 1940 without pay, using his office and stenographer in Sistersville *87 and making some trips to the property in each of the taxable years, on its behalf. He was attending to affairs of Old Hundred during more than one-half of the time he was in his office. He never was reimbursed for his expenditures for office and travel expenses for Old Hundred. Most of the other stockholders were friends of, had confidence in, and were content to have the affairs of the corporation handled by Charles. Charles made the following total advances to and received the following total amounts from Old Hundred: Received
Advanced to
from
Year
corporation
corporation
1935
$ 10,000.00
1936
13,000.00
1937
1,000.00
1938
3,711.33
1939
8,190.35
1940
4,300.00
1941
8,700.00
1942
1,500.00
1943
3,650.00
1944
2,300.00
1945
3,395.26
1946
2,100.00
1947
10,800.00
1948
4,250.00
1949
29,376.00
13,250.00
1950
42,000.00
18,000.00
1951
146,000.00
92,000.00
1952
93,000.00
51,000.00
1953
31,099.92
1954
11,000.00
1955 - through
4/5
1,000.00 Charles never received any interest on his advances to Old Hundred. Other stockholders advanced an additional $16,900 prior to July 15, 1939, and one advanced $2,000 in June 1951, *88 but none advanced any additional amounts although requested to do so by Charles. The mining properties of Old Hundred were not operated from February 1936 until April 1947 when they were leased to H. A. Ruether. Additional adjacent claims were purchased for Old Hundred and conveyed to it in September 1948. Ruether died in April 1949 and a manager of the properties was employed for the properties in June 1949. Mining operations were suspended in September 1952 and never thereafter resumed. The properties were not abandoned. Exploration work was done on the properties as late as 1953. Tax returns for Old Hundred for its fiscal years ended June 30, 1951, through 1954 showed net losses totaling about $176,313. The properties had value at all times material hereto. Charles continued to make advances to Old Hundred because he continued to hope until after the taxable years that the corporation might be able to earn profits and because he still hopes it may be sold for an amount sufficient to return some of his advances. His advances to and any amounts owed to him by Old Hundred did not become worthless during 1949 or 1950. Charles claimed no deductions on his returns for the taxable *89 years based upon his advances to Old Hundred. Charles claimed the following as "miscellaneous deductions" on his returns: 1949
1950
Office expense (including de-
preciation on a typewriter)
$3,121.33
$3,256.33
Traveling expense
312.20
156.00
Accountant's fee for prepar-
ing return
176.07
177.67
Total
$3,609.60
$3,590.00
The Commissioner, in determining the deficiencies, allowed $1,424.60 for 1949 and $1,480.20 for 1950 and disallowed the remaining portions of those claimed deductions. It is stipulated that Charles spent $3,121.33 in 1949 and $3,256.33 in 1950 for office facilities, of which the Commissioner disallowed 60 per cent and he also "disallowed claimed deductions of $312.20 for the taxable year 1949 and $156.00 for the taxable year 1950 representing travel expenses of Charles N. Kimball incurred in connection with the business of the said Old Hundred Gold Mining Company." Charles was interested, as stockholder and director or officer, in other corporations and in a partnership during the period from about 1907 through 1950 but his activities in connection with those interests did not constitute a business regularly carried on by *90 him during the taxable years bearing in any way upon his advances to and payment of expenses of Old Hundred. The office and travel expenses paid by Charles during 1949 and 1950 in connection with the affairs of Old Hundred were expenses of that corporation and were not ordinary and necessary expenses of any trade or business regularly carried on by Charles. They were either debts due from or advances to Old Hundred which did not become worthless and were not charged off in the taxable years. All facts stipulated by the parties are incorporated herein by this reference. Opinion MURDOCK, Judge: The office and travel expenses disallowed by the Commissioner as deductions were not ordinary and necessary expenses of any business regularly carried on by Charles and are not deductible by him under section 23(a). They were expenses of Old Hundred and Charles can not deduct them as his own even though he paid them. ; ; ; ; . He paid them on behalf of Old Hundred and *91 must look to it for repayment or a deduction when and if his right to repayment becomes worthless. No deduction was claimed on the returns based upon the advances. The present claim that the net advances of the taxable years are deductible for the year in which made is an after-thought not supported by the facts of record or any provision of the Internal Revenue Code. Decision will be entered for the respondent.